IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**FRANK TAFOYA,**

        **Plaintiff,**

vs.                                                         **CIVIL No. 03-0259 RLP**

**JO ANNE B. BARNHART,**
**Commissioner, Social Security,**

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

Plaintiff Frank Tafoya brings this action pursuant to §§42 U.S.C. 405(g) and 1383(c)(3) seeking judicial review of the decision of Defendant, the Commissioner of Social Security, to deny his applications for a period of disability and disability insurance benefits under Title II of the Social Security Act and for supplemental security income under Title XVI of the Social Security Act. (Docket No.11). For the reasons stated herein Plaintiff's Motion is granted, and this matter is remanded to the Commissioner of Social Security for Additional Proceedings.

**I.    Procedural Background**

Plaintiff filed applications for disability income benefits and supplemental security income on August 6, 1998, alleging an onset of disability of July 4, 1998. (Tr. 78,81,324). His applications were denied twice on administrative review, and again on February 25, 2000, by an Administrative Law Judge ("ALJ" herein). (Tr. 60-66, 73, 327, 238, 18-34). On January 23, 2003, the Appeals Council declined to review the decision of the ALJ on the 1998 applications, rendering the ALJ's February 25, 1998 decision the final decision of the Commissioner of Social Security.

Plaintiff filed a new application for benefits on November 29, 2000, while his original claims were pending review by the Appeals Council. Plaintiff was successful on his second application, and

was found disabled as of February 26, 2000. (Tr. 6-7). Accordingly, the period under review is from the date of alleged onset of disability, July 4, 1998, to February 25, 2000.

**II.     Factual Background**

Plaintiff is a Viet Nam War veteran. He was honorably discharged from the service in December 1973. He has a long history of mental disorders, social dysfunction and substance abuse. Although Plaintiff has physical ailments, the focus of this appeal is his mental condition[1].

All of Plaintiff's medical and psychiatric care has been provided through the Veterans Administration. He was treated at the VA Hospital in Albuquerque, N.M., in 1992 for depression and panic attacks. (Tr. 185). In December 1997, Plaintiff returned to Albuquerque from a long term drug rehabilitation program, but relapsed almost immediately.[2] On December 15, 1997, his physician, Dr. Horowitz, diagnosed depression, prescribed an antidepressant and referred him to the psychiatry department. (Tr. 162-163).

Plaintiff's care provider in the psychiatry department was physician's assistant Doreen

---

[1] In 1998, prior to his date of onset of disability, Plaintiff underwent surgical excision with reconstruction for a basal cell carcinoma on his nose.(Tr. 134, 136-139, 143-144, 147-148, 169). Although Plaintiff has had additional excisions there has been no recurrence of his cancer. (Tr. 239, 242, 230).

Plaintiff has hepatitis, which he states causes pain and fatigue. He has had at least one elevated SGPT (Tr. 226), but his liver function studies have been reported as normal. (Tr. 308-309).

Plaintiff began complaining of back pain on December 7, 1998 (Tr. 220), and continued to complain of pain thereafter. (See e.g., 210, 228-229, 227, 313). MRI of the lumbar spine disclosed a small, broad based disc protrusion at L5-S1 without significant spinal canal narrowing or nerve root impingement and mild facet hypertrophy most severe at L4-5 and L5-S1. (Tr. 249). Subsequent evaluation demonstrated no associated muscle weakness with complaints of occasional leg tingling. (Tr. 292). Plaintiff treats his back condition with exercise and use of a TENS unit. (Tr. 25, 219-220, 313).

[2] Plaintiff has used marijuana, crack cocaine, heroin, other opiates and "pills." (Tr. 186). In 1995 he was admitted to a year-long in-patient drug treatment program at the Veteran's Administration Hospital in Amarillo, Texas, followed by six months in a half-way house. He relapsed shortly after release from that program. (Tr. 129-131, 161-162, 167, 186, 232).

Siracusano[3], who first saw him in January 1998. She monitored his depression, medication, medication side effects and sobriety, and made referral requests to other hospital based specialty services.

Plaintiff worked in a Goodwill store until approximately July 4, 1998, when he again relapsed. (Tr. 129-131). He reported on July 10, 1998, that he had previously been diagnosed with Post Traumatic Stress Disorder ("PTSD" herein). (Tr. 130). He was placed on detoxification medication on July 19, continued taking antidepressant, and enrolled in a therapeutic work program through the VA Hospital in late August. (Tr. 125, 121, 224, 244). There is no indication that he was evaluated at that time for PTSD.

Plaintiff's progress in the therapeutic work program was monitored by John Baker VRS, CRC (Tr. 244, 238). He worked as a courier at the VA Hospital, delivering charts from building to building. (Tr. 238). The record is silent as to whether this was full or part time work, or whether special conditions were in place which accommodated Plaintiff's mental impairment. See 20 C.F.R. §§404.1573(c) & 416.973(c); 20 C.F.R. Subpt. P. App. 1 §12.00(D)(1)(c) (3). What is known is that the work did not constitute substantial gainful activity (Tr. 22), and that in general, Plaintiff did well in the program. (Tr. 238, 228, 318)

Also October 1998, Plaintiff was evaluated by Steven Sacks, PhD, at the request of the disability determination unit. (Tr. 185-190). Based on interview and mental status examination, Dr. Sacks made the following diagnosis:

> The claimant is experiencing major depressive disorder, recurrent. There also may be an element of post-traumatic stress disorder at the present time in regards to the

---

[3]Ms. Siracusano saw Plaintiff 14 times from January 7, 1998 to November 2, 1999. (Tr.161, 157, 156, 153, 149, 143, 131, 125, 124, 122, 121, 240, 227, 313).

3

depression, as well as "flashbacks" when hearing loud noises and reported nightmares . . .

Global Assessment of Functioning during the last year and currently is about 75.[4] . . . He currently would have some difficulty withstanding the stress and pressures associated with day to day work activities involving a great deal of expectations if placed upon him. I consider his impairment to be moderate to marked . . .

(Tr. 190).

In December 1998 Plaintiff reported increasing depression, difficulty sleeping, nightmares, social isolation, anger, hypervigilence, and his history of violent behavior (assaults, domestic violence) and substance abuse. (Tr. 212). On December 11, 1998, registered nurses Anthony Gaston and Sharon Sprague in the VA's PTSD/Trauma Clinic diagnosed PTSD and anxiety disorder. (Tr. 231-235). This assessment apparently led to a psychiatric evaluation by Leo E. Kreuz, M.D. on January 15, 1999. (Tr. 229-230.). Dr. Kreuz noted Plaintiff's symptoms of depression, anxiety and fatigue, current sobriety, and his history of violence toward others. He diagnosed current mixed mood and anxiety disorders with a history of anger control problems and prescribed antidepressant medications. On the same day Plaintiff started attending individual and group PTSD therapy sessions while awaiting admission to an inpatient treatment program. (Tr. 208-210, 228, 229).

Plaintiff was an inpatient at the VA's PTSD Residential Rehabilitation Program in Denver, Colorado, from April 20 to May 28, 1999. (Tr. 252-299). There, he was evaluated and treated by a team of care providers that included medical doctors, psychologists, social workers and recreational

---

[4] A GAF of 75 indicates " . . . transient and expectable reactions to psychosocial stressors . . . (with) no more than slight impairment in social, occupational or school functioning. . ." *Diagnostic and Statistical Manual of Mental Disorders,* Fourth Ed., at 32.

therapists. Psychological testing confirmed the diagnosis of severe, chronic PTSD.[5] (Tr. 262, 252). Plaintiff's treating physician, Phillip Montgomery, M.D., assigned diagnoses of PTSD, and alcohol and polysubstance drug abuse in remission, with GAF of 35 on admission and 40 on discharge[6]. (Tr. 259).

After discharge from inpatient treatment Plaintiff returned to Albuquerque and continued group and individual therapy, and participation in the work program. (Tr. 219, 220, 310-319)

## III.    ALJ's Decision

The ALJ found that Plaintiff's PTSD and depression were "severe" impairments, then inexplicably stated that Plaintiff's treating medical doctor had ruled out PTSD, referring to Dr. Kreuz' January 1999 evaluation. (Tr. 229-230). The ALJ stated that the non-physician care providers at the VA hospitals were not acceptable medical sources for the purposes of determining Plaintiff's diagnosis and prognosis, but did accept the records of these sources for the purpose of providing Plaintiff's statement, which could be evaluated. The ALJ disregarded evidence that Plaintiff's physician at the PTSD clinic in Denver was a medical doctor, who is an acceptable medical source. The ALJ did acknowledge Plaintiff's hospitalization for PTSD symptoms in April and May 1999, and the confirmation of the diagnosis of PTSD at that hospitalization.

The ALJ found that Plaintiff "has some difficulty working with coworkers and that he is not able to cope with high levels of stress." (Tr. 25). He then applied the Medical-Vocational guidelines

---

[5]A report written by a Psychology resident and co-signed by a staff psychologist, states that the diagnosis of PTSD was confirmed utilizing the Combat Exposure Scale, the Clinician-Administered PTSD Scale (CAPS), the Mississippi Scale for Combat Related PTSD, the Beck Depression Inventory, the State-Trait Anxiety Inventory, the Impact of Events Scale-Revised and clinician interview. (Tr. 262).

[6]A GAF of 31-40 indicates "Some impairment in reality testing or communication . . .OR major impairment in several areas, such as work, school, family relations, judgment, thinking or mood. . . 20 C.F.R. §§404.1527 & 416.927;

5

("grids" herein) without benefit of vocational testimony, and determined that Plaintiff was not disabled.

**IV.     Issues on Appeal**

Plaintiff raises the following issues:

1. Whether the ALJ erred in evaluating the medical evidence and

2. Whether the ALJ erred in applying the Medical-Vocational Guidelines ("grids" herein).

**V.      Standard of Review**.

The Social Security Act provides that final decisions of the Commissioner shall be subject to judicial review. *42 U.S.C. §405(g)*. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . " *Id.* I review the Commissioner's decision to determine only whether the decision is supported by substantial evidence and whether correct legal standards were applied. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence is more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable man might accept to support the conclusion. *Gossett v. Bowen,* 862 F.2d 802, 804 (10th Cir. 1988). The determination of whether substantial evidence supports the Commissioner's decision is not a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes a mere conclusion. *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). I will not reweigh the evidence, but will examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision in order to determine if the decision is supported by substantial evidence. *Glenn*, 21 F.3d at 984.

## VI.     Discussion.

The ALJ made several errors which require that his decision be reversed.

First, the ALJ failed to properly consider the evidence of treating physician Dr. Montgomery. Whether or not the non-physician mental health providers at the VA Hospitals should or should not be considered as part of a "treatment team" under the supervision of a medical doctor, clearly Dr. Montgomery is an acceptable medical source and a treating doctor, whose medical opinion as to the "nature and severity of [Plaintiff's] impairment, including [his] symptoms, diagnosis and prognosis and any physical or mental restrictions" is entitled to substantial weight. *Castellano v. Sec'y of Health & Hum. Serv.*, 26 F.2d 1027, 1029 (10th Cir. 1994); *see also* 20 C.F.R. §§404.1527 & 416.927.

Second, although many of the care providers who treated and evaluated Plaintiff at the VA hospitals were not "acceptable medical sources," as that term in defined in the regulations, the evidence from these sources can be used for more than simply evaluating Plaintiff's statements:

> *Other sources*. In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work.

20 C.F.R. §§404.1513(d), 416.913(d).

Third, the ALJ apparently gave controlling weight to a portion of the evaluation of Dr. Sacks. The ALJ noted Dr. Sacks' assignment of a GAF of 75, but disregarded his statement that Plaintiff's impairment was "moderate to marked." The two statements are inconsistent, and indicate that little weight should be accorded to Dr. Sack's opinion. *Cf., Goatcher v. Dep't of Health & Hum. Serv.*, 52 F.3d 288, 290 (10th Cir. 1995). (The opinion of a treating physician will be accorded little weight when it is internally inconsistent.).

7

Fourth, the ALJ's evaluation of Plaintiff's credibility does not comply with required legal principles. Rather than setting out specifically what evidence did nor did not support Plaintiff's testimony, the ALJ merely stated that "the testimony presented is credible to the extent it is supported by the underlying medical record." This falls far below the bar set for a legally sufficient credibility evaluation. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. Oct. 17, 1995) (a credibility finding must be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings") (*quoting Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988).

Fifth, even if Dr. Sacks' opinion was properly credited and Plaintiff's credibility was properly discounted, the extent and severity of Plaintiff's mental impairments preclude conclusive application of the grids. *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991) The grids may be used as a framework for evaluating disability, and when combined with evidence such as relevant testimony by a vocational expert, may support a finding of non-disability. *Id.* The ALJ did not obtain additional evidence, such as relevant testimony from a vocational expert, to support his finding of non-disability at step five.

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand [Docket No. 11] is granted. This matter is remanded to the Commissioner of Social Security for Additional Proceedings. The Commissioner is instructed to:

1. Reevaluate Plaintiff's mental impairment, applying correct legal principles in considering the evidence of Dr. Montgomery and non-physician care providers at the VA Hospitals. 20 C.F.R. §§404.1527 & 416.927.20C.F.R. §§404.1513(d), 416.913(d).

2. Reevaluate Plaintiff's credibility, closely and affirmatively linking her credibility

        finding to substantial evidence

3.      Obtain vocational testimony at step five of the sequential evaluation process. In order to adequately develop the record and provide an accurate basis for the opinion of a vocational expert, the Commissioner shall inquire into any special conditions that were in place during Plaintiff's employment in the therapeutic work program at the VA Hospital in 1998-1999.

 

                                          **RICHARD L. PUGLISI**
                                      **UNITED STATES MAGISTRATE JUDGE**
                                              **(sitting by designation)**